IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 4:21-CV-00052-FL

| | |
|---|---|
| RONNIE D. SUGGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **SECOND AMENDED COMPLAINT** |
| JOHN WOOD GROUP PLC and | ) |
| AMEC FOSTER WHEELER | ) |
| KAMTECH, INC., | ) |
| | ) |
| | ) |
| Defendant. | ) |

## NATURE OF THE ACTION

NOW COMES, Plaintiff, Ronnie D. Suggs, by and through the undersigned counsel of record, complaining of Defendants, John Wood Group PLC and Amec Foster Wheeler Kamtech, Inc., and to correct unlawful defamation of Plaintiff's character and wrongful termination and to provide appropriate relief to Plaintiff, Ronnie D. Suggs (hereinafter "Suggs"), who was damaged by Defendants' slanderous conduct. This action arises under common law for defamation in the form of slander. Suggs hereby files this Complaint which sets out in detail the wrongful termination and defamation by slander.

## PARTIES

1. Plaintiff, Ronnie D. Suggs, is a citizen and resident of Beaufort County, North Carolina.

2. At all relevant times, Plaintiff was employed by Defendant Amec Foster Wheeler Kamtech, Inc., hereinafter "Amec", as a Mechanical Superintendent, in Battlesboro, North Carolina.

3. Defendant John Wood Group PLC (hereinafter "JWG") acquired Amec in October 2017 in an all stock deal and serves as the parent company to Amec.

- 1 -

4. Defendant JWG is incorporated in and its principal place of business is in Aberdeen, Scotland.

5. Defendant, Amec, is incorporated in the state of Delaware and its principal place of business is in Tucker, Georgia.

6. Both defendants market their services to and conduct business in the State of North Carolina.

7. Defendant JWG is liable for the action of Amec under the instrumentality rule as JWG exercises actual control over Amec, such that the Amec is operated as a mere instrumentality of JWG. In other words, JWG has complete domination and control over its subsidiary, Amec, that Amec has no identity independent of the JWG. *See General Fidelity Insurance Company v. WFT, Inc.,* 269 N.C. App. 181 (2020).

8. Defendants are subject to the personal jurisdiction of this court as they purposely availed themselves of conducting activities within the State of North Carolina. Defendant regularly conducts business and employs citizens of the State of North Carolina and thereby meets the minimum contacts standard set forth in *International Shoe Co. v. Washington. See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 744 (1984); 326 U.S. 310, 315 (1945)).

9. This Court has jurisdiction, pursuant to 28 U.S.C. § 1332, as the parties and interests are diverse, and a plain reading of the Complaint shows that the amount in controversy exceeds the sum of $75,000.

## STATEMENT OF FACTS

10. The allegations contained in paragraphs 1 through 9 above realleged and incorporated herein by reference as if fully set forth.

11. At all relevant times, Plaintiff was a Mechanical Superintendent with Defendant Amec, working at Amec's project site in Battleboro, North Carolina.

12. Plaintiff began working for Amec approximately fourteen years ago.

13. In October 2017, Defendant JWG acquired Defendant Amec in an all stock deal.

14. In fall of 2019, Defendant became a salaried employee of the Defendant Amec.

15. Although Plaintiff's W-2 identifies his employer as Amec, all correspondence provided to him and all direction from management came from individuals associated with JWG or were on JWG's letter head.

16. While still employed at the Battleboro, North Carolina project site, Plaintiff approached regarding a project in Virginia working for Dominion Power. This project required employees to have an Occupational Safety Health Administration ("OSHA") 30-Hour certificate within the last four years. The OSHA 30-hour certification course "is a comprehensive safety program designed for anyone involved in the construction industry."[1]

17. Plaintiff has previously received his OSHA 30-hour certification; however, the certificate had not been received within the four-year time required by Dominion Power.

18. In approximately November 2020, Plaintiff was approached by Lonnie Emmert, another superintendent working for Defendant, who asked if Plaintiff had updated his OSHA 30-hour certification yet. Plaintiff explained that he had not, as he intended to take it online prior to transferring to the Virginia project.

19. Emmert informed Plaintiff that Brandis Kackos, Superintendent for Amec, had expressed interest in teaching the class if Kackos received enough interest, and requested that Plaintiff put his name on a list of interested employees. Emmert also estimated that the class would cost approximately $50 assuming Kackos was able to get 30 individuals to participate.

20. Plaintiff wrote down his name expressing interest in taking the class, however, no money exchanged hands, nor did he hear back regarding whether or not Kackos received enough interest or would be teaching the class.

21. In January 2021, Plaintiff was informed by Dan Howard, Vice President, who indicated that

---

[1] https://www.osha.com/courses/30-hour-construction.html

- 3 -

Case 4:21-cv-00052-FL   Document 17   Filed 06/07/21   Page 3 of 9

an investigation was underway regarding the OSHA 30 certification given out by Kackos. Howard asked Plaintiff if he had received a certification from Kackos, to which Plaintiff explained he had not and was unaware that a class had been conducted. Howard explained that Kackos had fraudulently provided 15 people OSHA 30 certifications. Howard also explained that since Plaintiff had not been a part of the class, and that he would not be liable for the fraudulent actions.

22. Two weeks into the Human Resources investigation relating to the fraudulent OSHA 30 certifications, Plaintiff received a phone call from Erica Delgado, Manager, Field Human Resources, as the insistence of Dan Howard, as Human Resources had planned to terminate Plaintiff without interviewing him. Upon information and belief, all other parties had been interviewed.

23. During this phone call, Plaintiff explained that he had written his name down expressing interest if a legitimate OSHA 30 class was taught, however, he had not heard anything after writing his name on the piece of paper provided by Emmert, did not pay any money for the class, and did not receive a certification.

24. On January 14, 2021, Plaintiff was terminated by Robert O'Neal, Defendant's Senior Manager of People and Organization, due to company policy violation.

25. Following his termination, Plaintiff was informed by James Dorton, Site Manager, that he would be banned from working with Defendant JWG for a minimum of one (1) year and from working with Dominion Power for five (5) years.

26. Defendants have published false statements regarding Plaintiff's involvement in the fraudulent OSHA 30 class to OSHA and Dominion Power.

27. Plaintiff has been damages as he has been terminated, lost use of his work issued 2019 Chevrolet Silverado, lost his and his dependent's medical, life, accidental death and

dismemberment, dental, and vision insurance, has been banned from working with Defendant for a minimum of one (1) year and has been banned from working with Dominion Power for five (5) years. Defendant and Dominion Power are large solar programs and control the north eastern counties of North Carolina and neighboring Virginia. Plaintiff's inability to work for these companies will cause him to have to take jobs much further away from his home and rebuild his work reputation after fourteen years of satisfactory work for Defendant.

### FIRST CAUSE OF ACTION
(Defamation by Means of Slander)

28. The allegation set forth in paragraphs 1 through 27 are realleged and incorporated by reference as if fully set forth herein.

29. To establish a claim for defamation, a plaintiff must show that Defendants (1) make false statements (2) published to a third party (3) that caused injury to Plaintiff's reputation. *See Boyce & Isley, PLLC v. Cooper,* 211 N.C. App. 469, 478, 710 S.E.2d 309, 317 (2011) (citing *Tyson v. L'eggs Products, Inc.,* 84 N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (1987)).

30. Slander may be actionable *per se* or actionable *per quod. Badame v. Lampke,* 242 N.C. 755, 89 S.E.2d 466 (1955); *Williams v. Rutherford Freight Lines, Inc.,* 10 N.C. App. 384, 179 S.E.2d 319 (1971).

   i.  *Defamation Per Se*

31. North Carolina generally limits "false statements which may be classified as actionable *per se* to those which charge plaintiff with a crime or offense involving moral turpitude, impeach his trade or profession, or impute to him a loathsome disease." *Williams,* 10 N.C. App. at 388, 179 S.E.2d at 322.

32. To come within the second form of slander *per se*, impeach his trade or profession, a false statement "(1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business." *Badame,* 242 N.C. at 757, 89 S.E.2d at 468.

33. For claim of defamation *per se* "malice and damages are presumed from the facts of publication." *Flake v. Greensboro News Co.,* 212 N.C. 780, 787, 195 S.E. 55, 60 (1938).

34. Defendants are liable for Defamation *Per Se* as Defendant false statements which charge Plaintiff with committing fraud, and further indicated such to Dominion Power and the Occupational Safety and Health Administration (OSHA).

35. Defendants are liable for Defamation *Per Se* as Defendant Amec made false statements relating to Plaintiff's involving in a fraudulent OSHA 30 class, to Dominion Power and the OSHA, both of which are third parties, and these statements impeached Plaintiff's credibility, integrity, and professionalism in his trade.

36. The defamatory statements by Defendant Amec fall under the second form of slander *per se,* as the statements touched Plaintiff in his special trade, and have prevented him from being able to work in his field of work in the northern counties of North Carolina which are predominantly controlled by Defendant and Dominion Power.

ii. Defamation Per Quod

37. Under North Carolina common law, defamation per quod requires that: "(1) defendant publish false statements, (2) the statements were defamatory, (3) the statements were of or concerning the plaintiff, (4) the statements were published to a third person, (5) the publication caused special damages to plaintiff, and (6) defendant did so with actual malice as defined in *Sullivan*, that is, 'with knowledge that [the statements were] false or with reckless disregard of whether [they were] false or not.'" *Griffin v. Holden,* 180 N.C. App. 129, 136, 636 S.E.2d 298, 304 (2006) (*citing New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80, 84 S.Ct. 710, 725-26 (1964)).

38. Defendant's statements are defamatory as they regard Plaintiff's honesty and credibility as a Mechanical Superintendent. Defendant's statements damaged Plaintiff's reputation as he has been banned from working for Defendant for a minimum of one year and for Dominion Power for five years. In addition, Plaintiff was terminated from his position with Defendant and lost his salary, per diem, travel pay, insurance coverage and use of his 2019 Chevrolet Silverado. In addition, Plaintiff will be required to seek work in his industry further away from his home in Beaufort County, due to the bans from

Defendant and Dominion Power, requiring him greater traveling time, extended time away from home, and less time with his minor child.

## SECOND CAUSE OF ACTION
(Wrongful Termination in Violation of Public Policy)

39. The allegations contained in paragraphs 1 though 38 above are re-alleged as incorporated herein by reference as if fully set forth.

40. "Wrongful discharge in violation of public policy is a tort claim, *Paquette v. Country of Durham,* 155 N.C. App. 415, ----, 573 S.E.2d 715, 718 (2002), *disc. review denied,* 357 N.C. 165, 580 S.E.2d 695, (May 1, 2003), and to prevail on this claim, an employee must 'plead[] and prov[e] that the employee's dismissal occurred for a reason that violates public policy.' *Salter v. E & J Healthcare, Inc.,* 155 N.C. App. 685, ----. 575 S.E.2d 46, 51 (2003)." *Brackett v. SGL Carbon Corp.,* 158 N.C. App. 252, 259, 580 S.E.2d 757, 761 (2003).

41. "There is no specific list of what actions constitute a violation of public policy. However, wrongful discharge claims have been recognized in North Carolina where the employee was discharged . . . based on some activity by the employer contrary to law or public policy." *Id.* (citing *Ridenhour v. IBM,* 132 N.C. App. 563, 568-69, 512 S.E.2d 774, 778, *disc. review denied,* 350 N.C. 595, 537 S.E.2d 481 (1991)).

42. Plaintiff was dismissed based on the defamatory statement of Defendants, which is against public policy. It is against public policy to defame another in North Carolina. *See Tyson v. L'Eggs Production, Inc.,* 84 N.C. App. 1, 11, 351 S.E.2d 834, 840.

43. Plaintiff was terminated based on Defendants' defamatory statements that he received a fraudulent OSHA 30-hour certification. This action by the Defendant is in direct violation of the public policy recognized by the North Carolina courts prohibiting defamation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

A. Issue an Order enjoining Defendants, directly and indirectly, and whether alone or in

concert with others, including any officer, agent, employee and/or representative of Defendanst, from continuing to publish further defamatory statements about Plaintiff;

B. Award Plaintiff any and all damages in excess of $225,000 resulting from Defendants' defamatory statements about Plaintiff's truthfulness and qualifications in his profession and Plaintiff's wrongful termination;

C. Order Defendants to expunge Plaintiff's employment record as necessary to eradicate the effects of Defendants' defamatory statements and wrongful termination;

D. Award Plaintiff punitive damages from the Defendant in an amount the Court deems appropriate;

E. Award Plaintiff the cost and expenses incurred in bringing this action, including attorneys' fees pursuant to N.C. Gen. Stat. § 6-18, from Defendants; and

F. Award Plaintiff any other relief that the Court may deem necessary, just, and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of facts raised by this Complaint.

Respectfully submitted this, the 7th day of June, 2021.

               MCLAWHORN & RUSSELL PLLC

               /s/Christine D. Kidd
               Benjamin T. McLawhorn
               N.C. State Bar No. 53821
               Ben@mclawfirmnc.com
               Christine D. Kidd
               N.C. State Bar. No. 56518
               Christine@mclawfirmnc.com
               McLawhorn & Russell, PLLC
               8801 Fast Park Drive, Suite 307
               Raleigh, NC 27617
               Telephone: (919) 364-8975
               Facsimile: (919) 646-4032
               *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2021, I served a true and correct copy of the foregoing document via the court's electronic filing system to the following counsel of record:

Elizabeth A. Martineau
Martineau King PLLC
P.O. Box 241268
Charlotte, NC 28224
EMartineau@martineauking.com

This the 7th day of June, 2021.

/s/Christine D. Kidd
Benjamin T. McLawhorn
N.C. State Bar No. 53821
Ben@mclawfirmnc.com
Christine D. Kidd
N.C. State Bar. No. 56518
Christine@mclawfirmnc.com
McLawhorn & Russell, PLLC
8801 Fast Park Drive, Suite 307
Raleigh, NC 27617
Telephone: (919) 364-8975
Facsimile: (919) 646-4032
*Attorneys for Plaintiff*